# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### DOCKET NO. 3:16-CV-254-MR

| | | |
|---|---|---|
| ERIC M. DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 6] and the Defendant's Motion for Summary Judgment [Doc. 8]. As more fully explained below, the Court will grant the Plaintiff's motion and remand this matter.

## I.    PROCEDURAL BACKGROUND

The Plaintiff, Eric M. Dixon ("Plaintiff") asserts that his depression, panic attacks, and migraines constitute severe mental and physical impairments under the Social Security Act (the "Act") rendering him disabled. On June 10, 2014, the Plaintiff filed an application for disability benefits under Title II and Part A of Title XVIII of the Act, alleging an onset date of May 8,

2014.  [Transcript ("T.") at 193].  The Plaintiff's application was denied initially and upon reconsideration.  [T. at 105, 110].  Upon Plaintiff's request, a hearing was held on October 22, 2015, before an Administrative Law Judge ("ALJ").  [T. at 32-74].  Present at the hearing were the Plaintiff; Daniel Bridgman, the Plaintiff's attorney; Angela Guise Dixon, a witness; and a vocational expert ("VE").  [Id.].  On December 29, 2015, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled.  [T. at 11-27].  On March 23, 2016, the Appeals Council denied the Plaintiff's request for review [T. at 2], thereby making the ALJ's decision the final decision of the Commissioner.  The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards

and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III.    THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015).  "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps."  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted).  The burden is on the claimant to make the requisite showing at the first four steps.  Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity.  If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant.  Id. (citing 20 C.F.R. § 416.920).  If not, the case progresses to step two, where the claimant must show a severe impairment.  If the claimant does not show any physical or mental deficiencies, or a combination thereof,

which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled.  Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P.  If so, the claimant is automatically deemed disabled regardless of age, education or work experience.  Id.  If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC").  The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions.   SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634.  If the claimant can still perform his or her past work, then the claimant is not disabled.  Id.  Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner.  At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative

work which exists in substantial numbers in the national economy.  Id.; Hines
v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006).  "The Commissioner typically
offers this evidence through the testimony of a vocational expert responding
to a hypothetical that incorporates the claimant's limitations."  20 C.F.R. §§
404.1520, 416.920; Mascio, 780 F.3d at 635.  If the Commissioner succeeds
in shouldering her burden at step five, the claimant is not disabled and the
application for benefits must be denied.  Id.  Otherwise, the claimant is
entitled to benefits.  In this case, the ALJ rendered a determination adverse
to the Plaintiff at the fifth step.

## IV.    THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial
gainful activity since his alleged onset date, May 8, 2014.  [T. at 13].  At step
two, the ALJ found that the Plaintiff has severe impairments including
migraines, depression, and panic attacks.  [Id.].  At step three, the ALJ
determined that the Plaintiff does not have an impairment or combination of
impairments that meets or medically equals the Listings.  [Id.].  The ALJ then
determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR
> 404.1567(b) except the claimant needs the option to
> sit/stand with ability to change positions twice an
> hour.  The claimant can have no public contact and
> only occasional interaction with coworkers and
> supervisors.  The claimant is further limited to simple,

routine, repetitive tasks at a non-production pace with no complex decisionmaking, crisis situations or constant change in routine.

[Id. at 16].

The ALJ identified Plaintiff's past relevant work as a mail handler, a stacker operator, and mail supervisor. [Id. at 25]. The ALJ observed, however, that because the Plaintiff's residual functional capacity limitation "to simple, routine, repetitive tasks" is "inconsistent with his semi-skilled to skilled past relevant work," his "past relevant work is precluded." [Id.]. Accordingly, at step four, the ALJ concluded Plaintiff was unable to perform past relevant work. [Id.].

With the Plaintiff having carried his burden through the first four steps, the ALJ then assessed whether, at step five, the Commissioner could meet her burden of showing the availability of jobs Plaintiff is able to do, given his RFC. [Id. at 25-6]. Based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that he was able to perform, including parking lot garage cashier, small parts assembler, and laundry folder. [Id. at 26]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from

May 8, 2014, the alleged onset date, through December 29, 2015, the date of the ALJ's decision.  [Id.].

## V.  DISCUSSION[1]

In this appeal, the Plaintiff presents three arguments as grounds for reversal of the ALJ's decision.  First, Plaintiff asserts that the ALJ erred in failing to provide a function-by-function analysis of Plaintiff's mental limitations in the RFC assessment as required by SSR 96-8p.  [Doc. 7 at 5]. Second, Plaintiff argues the ALJ erred in failing to give "good reasons" for rejecting the opinions of all of Plaintiff's treating physicians.  Third, Plaintiff contends the ALJ erred in failing to give Plaintiff's disability determination made by the Department of Veterans Affairs (VA) "substantial weight" as mandated by the Fourth Circuit.  [Id.].  The Plaintiff argues these errors require remand.  The Defendant, on the other hand, asserts the ALJ's determinations regarding Plaintiff's RFC, the weight to be accorded the VA rating, and the reasons for the weights assigned to the opinions of Plaintiff's treating sources were supported by substantial evidence and reached through the application of the correct legal standards.  [Doc. 9 at 1-2, 6].

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

Having considered the arguments raised by both parties, the Court concludes that the ALJ erred in each of the three ways argued by Plaintiff.

## A.    The RFC Determination.

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the Regulations.[2]  SSR 96-8p; <u>see also</u>, <u>Mascio</u>, 780 F.3d at 636 (remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based on severe mental health impairments, the Social Security Rules and Regulations require a much more in-depth review and analysis of the plaintiff's past mental health history.  The Regulations make plain that "[p]articular problems are often involved in

---

[2] The functions listed in the Regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions."  20 C.F.R. § 416.945.

evaluating mental impairments in individuals who have long histories of …

prolonged outpatient care with supportive therapy and medication."    20

C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(E).    The Regulations,

therefore, set forth a mechanism for this type of review and documentation,

known as the "special technique," to assist ALJs in assessing a claimant's

mental RFC.  See SSR 96-8P; 20 C.F.R. §§ 404.1520a, 416.920a.

With regard to mental health issues, "[t]he determination of mental

RFC is crucial to the evaluation of your capacity to do [substantial gainful

activity] when your impairment(s) does not meet or equal the criteria of the

listings, but is nevertheless severe."  20 C.F.R. § 404, Appendix 1 to Subpart

P, § 12.00(A).  Therefore, the determination of mental RFC, as noted above,

is accomplished through the use of the aforementioned "special technique."

> Under the special technique, we must first evaluate
> your pertinent symptoms, signs, and laboratory
> findings to determine whether you have a medically
> determinable mental impairment(s)….    If we
> determine that you have a medically determinable
> mental impairment(s), we must specify the
> symptoms, signs, and laboratory findings that
> substantiate the presence of the impairment(s) and
> document our findings[.]

20 C.F.R. § 404.1520a(b).  For this reason, Rule 96-8p explains as follows:

> The RFC assessment must include a narrative
> discussion describing how the evidence supports
> each conclusion, citing specific medical facts (e.g.,
> laboratory findings) and nonmedical evidence (e.g.,

daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p.  "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  Id.

In this case, the ALJ failed to conduct any function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment.  [See T. at 14-16].  At step three, in deciding Plaintiff's mental impairments did not meet or medically equal the "Paragraph B" criteria in listings 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders),[3] the ALJ made findings on Plaintiff's limitations and difficulties relative to activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  [Id. at 15-16].  The ALJ then noted:

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments

_____

[3] Paragraph B of these listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits his functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A).

at steps 2 and 3 of the sequential evaluation process. <u>The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)</u>. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[T. at 16 (emphasis added)].

By finding in step three that Plaintiff suffers from mild restriction in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence or pace, the ALJ found that facts exist which correlate with a limitation on Plaintiff's ability to carry out the areas of mental functioning listed in Paragraph B. In formulating Plaintiff's RFC, however, the ALJ failed to explain whether these limitations translated into any actual functional limitations. The only mental limitation the ALJ addressed was Plaintiff's "moderate difficulties" in "concentration, persistence or pace," and he attempted to account for this limitation by limiting Plaintiff to "simple, routine, repetitive tasks at a non-production pace with no complex decisionmaking, crisis situations or constant changes in routine." [T. at 16]. A limitation to simple, repetitive tasks at a non-production pace, however, does not "account for a limitation in concentration,

persistence or pace." <u>Mascio</u>, 780 F.3d at 638; <u>see also</u> <u>Kitrell v. Colvin</u>, No. 5:14-cv-163-RJC, 2016 WL 1048070, at *4 (W.D.N.C. March 6, 2016) (Conrad, J.); <u>Scruggs v. Colvin</u>, No. 3:14-cv-466-MOC, 2015 WL 2250890, at *5-6 (W.D.N.C. May 13, 2015) (Cogburn, J.). Furthermore, with respect to the limitation of "no complex decisionmaking, crisis situations or constant changes in routine," there is no explanation from the ALJ as to where this limitation comes from or how it accounts for his moderate limitations in concentration, persistence, and pace, if at all. A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." <u>Mascio</u>, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." <u>Mills v. Berryhill</u>, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted). As the Fourth Circuit stated in <u>Mascio</u>, "[p]erhaps the ALJ can explain why [Plaintiff's] moderate limitation in concentration, persistence or pace … does

not translate into a limitation in [his] residual functional capacity…. But because the ALJ gave no explanation, a remand is in order." 780 F.3d at 638.

For these reasons, this matter will be remanded to the ALJ so that he may properly articulate his assessment of the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636. A careful function-by-function analysis of Plaintiff's mental limitations and work abilities is crucial to the ALJ's ability to thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). A narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, is essential and should account for Plaintiff's limitations in concentration, persistence or pace and include an assessment of whether Plaintiff can perform work-related tasks for a full work day. See Scruggs, 2015 WL 2250890, at *5 (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect her ability to perform work-related functions, but also her ability to perform them for a full workday).

## B.    The Evaluation of Opinion Evidence.

Plaintiff next assigns error to the ALJ's asserted failure to provide "good reasons" for assigning little or no weight to the opinions of Plaintiff's treating physicians.  [Doc. 7 at 15].

In making disability determinations, the Regulations require ALJs to consider all medical opinions of record.  20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.").  Regardless of the source of the medical opinion, the ALJ must first evaluate and weigh every medical opinion in the record.  Id., § 404.1527(b) & (c).  Generally speaking, more weight will be given to an opinion of a medical source who has examined the claimant than to a non-examining source.  20 C.F.R. § 404.1527(c).  Further, more weight will generally be given to opinions from a claimant's treating sources than from sources rendering an opinion based upon a single or limited examination of a claimant.  Id.  All four of the medical source opinions at issue here were provided by medical providers who actually examined and treated the Plaintiff, some for a number of years.

"The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a

medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Also, the ALJ must always give "good reasons" in his decision "for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)." SSR 96-2p. Furthermore

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, <u>supported by the evidence in the case record</u>, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

<u>Id.</u> (emphasis added).

In this matter, Plaintiff argues the weight the ALJ ascribed to four different treating medical source opinions was unsupported by substantial evidence. [<u>See</u> Doc. 7 at 16-24]. The medical opinions at issue were provided by Marvin Poston, Psy.D; Andrew Stefanick, M.D.; K.S. Pettis, M.D.; and E.R. Chander, M.D. The Court takes them in turn. Dr. Poston is a licensed psychologist who evaluated Plaintiff multiple times in relation to Plaintiff's VA disability claim and also provided a Mental Health Medical Source Statement on July 23, 2015. Dr. Poston opined Plaintiff would need daily, unscheduled breaks lasting four to eight hours during the workday due to his symptoms; Plaintiff would be off task twenty-five percent or more of the

workday due to attention and concentration deficits secondary to his symptoms; and Plaintiff would be absent more than four days per month due to his impairments and treatment. Further, Plaintiff has marked restrictions of activities of daily living, maintaining social function and maintaining concentration, persistence and pace. After noting Dr. Poston's opinion, the ALJ "gives little weight to Dr. Poston's opinion because the evidence, in activities of daily living, social function or concentration, persistence or pace, does not support marked limitations." The ALJ, however, provides no citation to the record evidence in support of this weight. The ALJ's decision must give "good reasons" for the weight it gives to a treating source's medical opinion and "must contain specific reasons for the weight given to the treating source's medical opinion, *supported by evidence in the case record.*" SSR 96-2P. Simply stating that "the evidence … does not support marked limitations" is insufficient. The ALJ failed to satisfy SSR 96-2P with regard to Dr. Poston's opinion.

Dr. Stefanick is a staff neurologist for the Veterans Administration who treated Plaintiff for migraine headaches over the course of approximately two years, with many office visits evidenced in the record. [See T. at 310, 313, 315-16, 368, 382-83, 583, 670, 675]. On July 28, 2015, Dr. Stefanick prepared a Headaches Medical Source Statement in which he opined that

Plaintiff has severe intractable migraine headaches with associated nausea, vomiting, photophobia and throbbing pain. The migraines render Plaintiff unable to tolerate even low stress work and preclude him from performing basic work activities. Furthermore, Plaintiff would be off task more than twenty-five percent of the time, would need unscheduled breaks during the day, and his impairments and treatments would cause absences more than four days per month. [T. at 670-71]. Dr. Stefanick also indicated that Plaintiff suffers from migraines approximately five times per week and that each migraine lasts two to three days.[4] [T. at 670]. The ALJ assigned "no weight" to Dr. Stefanick's opinion "because his statement does not indicate a length of contact, though it indicates frequency is every three to four months. Moreover, migraine headaches that occur [f]ive days per week lasting 2-3 days is not possible." [T. at 23]. First, the length of contact of nearly two years is readily apparent in the record evidence. [T. at 310, 313, 315-16, 368, 382-83, 583, 670, 675]. It is unclear from the decision why or how this record evidence was disregarded or ignored when the ALJ decided to assign no weight to Dr. Stefanick's opinion. Second, with respect to the frequency of Plaintiff's migraines, 20 C.F.R. § 404.1520b(b) outlines the procedure for resolving an apparent inconsistency in medical source evidence, which

_____

[4] Clearly, this frequency of migraines is temporally and logically impossible.

includes contacting the physician to seek additional evidence or clarification. Rather than seek clarification on what seems to be a simple scrivener's error regarding the frequency of Plaintiff's migraines, the ALJ opted instead to assign "no weight" to *any* of Dr. Stefanick's treating medical source opinion. The ALJ failed to provide "good reasons" for the weight he assigned to Dr. Stefanick's opinion.

Next, Dr. Pettis is a medical doctor who had been treating Plaintiff for low back pain and migraines for ten years when he prepared a Physical Medical Source Statement on August 20, 2015. [T. at 672-73]. Dr. Pettis is the only healthcare provider to provide opinions related to Plaintiff's back pain and had, by far, the longest duration of contact with Plaintiff at the time of rendering his opinions. [See id.]. Dr. Pettis described Plaintiff's symptoms as "severe headaches, back pain/spasms/fatigue, [and] dizziness." [Id. at 672]. Dr. Pettis opined that Plaintiff cannot walk a city block without rest or severe pain, cannot sit and stand/walk for even two hours of an eight-hour workday, and can never lift or carry. Like Drs. Poston and Stefanick, Dr. Pettis opined that Plaintiff would be off task twenty-five percent of the workday and would be absent from work for more than four days per month. [Id.]. The ALJ attributed "little weight" to Dr. Pettis' opinion "because there is no basis in the evidence for the limitation to never lift less than 10 pounds or

sit less than two hours per day." [Id. at 23]. As such, the ALJ's assignment of little weight to Dr. Pettis' opinion was based a putative lack of record evidence for the limitation rather than a conflict between the record evidence and the limitation. The record evidence, however, includes the results of objective medical tests[5] that support Dr. Pettis' opinions, as well as well-documented signs, symptoms, and treatment of low back pain over several years. [T. at 308-310, 313-14, 316, 332, 364, 369, 384, 388-90, 452-54, 461, 465-66, 469-70, 478, 480, 492-93, 504-5, 510-11, 525, 529-31, 549-50, 568, 571-73, 628-30, 633-35, 648-50]. Again, as with Dr. Stefanick, the ALJ does not articulate why he disregarded or ignored this record evidence in his weighing of Dr. Pettis' opinion. "[A]n ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion. As a lay person, an ALJ is simply not qualified to interpret raw medical data in functional terms." See Webster v. Colvin, No. 1:11-cv-101, 2014 WL 4060570, at *4 (M.D.N.C. Aug. 15, 2014) (Peake, J.) (Citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (internal quotations omitted)). In any

---

[5] Plaintiff underwent an MRI imaging study in 2011 on his report of "constant pain, not being able to do everyday things," which demonstrated "[l]eft paramedian subligamentous disc protrusion with left nerve root impingement in the lateral recess at L5-S1" and "[a]symmetric disc bulging to the right L4-L5 with mild nerve root impingement." [T. at 453]. The L5-S1 and L4-L5 vertebra are in the lower back.

event, the ALJ failed to provide "good reasons" for the weight he assigned to Dr. Pettis' opinions.

Finally, Dr. Chander is a staff psychiatrist with the Veterans Administration who had treated Plaintiff for major recurrent severe depression for well over a year when he prepared a Mental Health Medical Source Statement on October 1, 2015. [T. at 676]. Like Drs. Poston, Pettis and Stefanick, Dr. Chander opined Plaintiff would be off task twenty-five percent of the workday and would be absent from work more than four days per month due to his impairments or treatment. Dr. Chander further opined that Plaintiff is incapable of even low stress work and has marked restrictions of activities of daily living and moderate limitations in social functioning and maintaining concentration, persistence or pace. [T. at 676]. The ALJ assigned "little weight" to Dr. Chander's opinion because it "is inconsistent with evidence of record. For instance, the evidence of record does not support 'marked' restrictions in ADLs, especially given he helps out around the house, drives, looks after at least one of his children, although it is only for a brief time after he arrives home from school." [T. at 24]. However, these select activities of daily living on which the ALJ relies in assigning little weight to Dr. Chander's opinion do not accurately reflect the record evidence and

greatly minimize the scope of Plaintiff's limitations in this regard.[6]  As such, the ALJ failed to articulate how that evidence in the case record supported his decision to attribute "little weight" to Dr. Chander's opinion.

These four medical source opinions of Plaintiff's treating physicians, were supported by the evidence in the case record.  Therefore, the ALJ's failure to provide good, specific reasons in his decision to ascribe little weight to these opinions requires remand. SSR96-2P.

### C.      Weight of the VA Disability Determination.

The Court next turns to the Plaintiff's argument that the ALJ erred in assigning "little weight" to the VA having provided Plaintiff with a 100% disability rating.  On March 11, 2014, the VA determined that Plaintiff was 100% disabled beginning November 23, 2012, as a result of his major depression with alcohol dependence.  [T. at 176].  In his RFC determination, the ALJ gave "little weight" to the VA rating "because it is inconsistent with the claimant's ability to engage in childcare activities, [and to] attend

---

[6] For example, the record shows that "on bad days," of which Plaintiff has approximately twenty per month, Plaintiff is unable to do anything.  [T. at 43-4].  On "a good day," Plaintiff attempts to do simple things like washing dishes and folding clothes.  [Id. at 44].  Further, while Plaintiff is home when his eight-year-old son gets home from school by bus, Plaintiff is usually lying down and is always unable to help his son with his homework.  On some days, Plaintiff is unable to even speak with his son after school.  [Id. at 45-6, 64].  Plaintiff can no longer attend ball games, travel, or play with his son.  [Id. at 49].  He only drives to and from his local doctors' appointments and infrequently drives to the grocery store, which is only one and a half miles from his home.  [Id. at 56-7].

basketball games" and because it is inconsistent with other unspecified evidence of record. [Id. at 24]. Plaintiff argues that the ALJ's attribution of "little weight" to the VA's disability rating was reversible error, citing for support the Fourth Circuit's decision in Bird v. Commissioner, 699 F.3d 337 (4th Cir. 2012). As the Fourth Circuit observed in Bird, "[b]ecause the purpose and evaluation methodology of both [the VA and SSA] programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." 699 F.3d at 343.

In Bird, the Fourth Circuit held that:

> [I]n making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

Id. at 343 (emphasis added). Here, the ALJ based his decision to attribute "little weight" to the 100% VA disability rating on Plaintiff's ability to participate in childcare and to attend basketball games and on the rating's inconsistency "with the other evidence of record." [T. at 24]. None of these reasons, as presented by the ALJ, either alone or in combination, "clearly demonstrate" that a deviation from the VA rating is appropriate. First, the ALJ set forth no

analysis to support the conclusory finding of inconsistency of the VA rating with other evidence of record. The Court cannot be left to guess regarding the basis of the ALJ's conclusions on this issue. To the extent it was based on the ALJ's improper evaluation and weighing of medical source opinions, the ALJ is directed to Section B, above. Second, neither Plaintiff's attendance at basketball games[7] nor his very minimal participation in childcare "clearly demonstrate" that a deviation from the 100% disability rating proffered by the VA is appropriate. A claimant's limited ability to engage in particular activities of daily living is insufficient as a matter of law to negate a 100% disability rating. See Seamon v. Berryhill, No. 3:36-cv-812-MOC, 2017 WL 3595490, at *6 (W.D.N.C. Aug. 21, 2017); Totten v. Califano, 624 F.2d 10, 11-12 (4th Cir. 1980). As such, the ALJ's unsupported decision attributing little weight to Plaintiff's 100% disability rating by the VA was legal error. For this reason, the decision of the ALJ must be reversed.

---

[7] The ALJ does not cite and the Court does not see where the record shows that Plaintiff attends basketball games. Plaintiff, on the other hand, testified at his hearing on October 22, 2015, that he is *no longer able* to attend "ballgames." [T. at 49].

## VI. CONCLUSION

For the reasons stated, remand is required. On remand, the ALJ should: (1) conduct a proper function-by-function analysis of the Plaintiff's mental residual functional capacity in accordance with and evidencing use of the "special technique" set forth in 20 C.F.R. § 404.1520a(b) and Rule 96-8p; (2) properly weigh the medical opinions of Plaintiff's treating physicians in accordance with the Regulations; and (3) properly weigh Plaintiff's VA disability rating as required by the Regulations and the Fourth Circuit in Bird.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 6] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 8] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 25, 2017

Martin Reidinger
United States District Judge